## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

CHRISTOPHER ALLEN PUNZO,

        Plaintiff,

v.                                      Case No. 2:20-cv-00744

BETSY JIVIDEN, Commissioner, Division of Corrections,
ADMINISTRATOR (Name Unknown),
TIM KING, Superintendent, and
C.O. BUTCHER,

        Defendants.

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are Defendants' motions to dismiss (ECF Nos. 20 and 22) and Plaintiff's proposed motion to amend complaint (ECF No. 49). For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendants' motions to dismiss (ECF Nos. 20 and 22) with respect to the exhaustion of administrative remedies defense, but otherwise **GRANT** the motions to dismiss for failure to state a claim upon which relief may be granted against Defendants Jividen, King, and Butcher, **DENY** Plaintiff's proposed motion to amend his complaint (ECF No. 49), **DISMISS** Defendant Administrator (Name Unknown) pursuant to 28 U.S.C. § 1915A(b)(1) and 1915(e)(2)(B), and **DISMISS** this civil action from the docket of the court.

I.    *PLAINTIFF'S ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY*

On November 12, 2020, Plaintiff filed a complaint (ECF No. 1) alleging that, after his arrest in West Virginia on a fugitive from justice warrant out of the State of Missouri, he was temporarily incarcerated at the Southwestern Regional Jail ("SWRJ") in Holden, West Virginia.  His complaint alleges that, on October 3, 2020, while being housed in a medical quarantine unit, he suffered an anxiety attack and requested medical treatment, described simply as "my medication."  (ECF No. 1 at 4).  He was taken to an exam room, where he was seen by an unidentified nurse.  (*Id.*)  However, after the nurse left the room, a male correctional officer, whom he believes to be Defendant C.O. Butcher ("Butcher"), allegedly threatened "to put knots on [Plaintiff's] head if he came to medical again."  (*Id.*)  Plaintiff allegedly stated, "So you are threatening me?" and Butcher responded, "No, I'm promising."  (*Id.*)  However, Plaintiff does not allege that any physical assault by Butcher occurred or that he suffered any actual physical harm as a result of Butcher's conduct.

The complaint further alleges that Plaintiff "had been asking for [his] legal work and [religious] materials and was told that [he] could not have them at this facility."  (*Id.* at 5).  Plaintiff further alleges that, when he asked for his legal work on the jail's kiosk, he was told that "staff is looking into it" but no action was taken.  (*Id.*)  Plaintiff further claims that he had to defend himself at a hearing without the use of "the Interstate Agreement on Detainer ["IAD"] forms and provisions."  (*Id.*)

He further complains generally about being housed in "unsanitary, dangerous conditions" at the SWRJ; specifically, that all the units are "dirty," with "food, spilt fluids everywhere" and are "not cleaned."  (*Id.*)  He further alleges that he was held in a cell where the lights were not working and were not fixed for 10 days.  (*Id.*)  Finally, he alleges that "psychological intimidation" and "physical violence," or threats thereof, occur at the

SWRJ. (*Id.*) However, he does not allege that he suffered any actual injury from any of these conditions. The complaint contends that this conduct constituted "cruel and unusual punishment, denial of [his] due process rights, and denial of equal protection under the laws." (*Id.*) As Defendants, Plaintiff names Betsy Jividen ("Jividen"), the Commissioner of the West Virginia Division of Corrections and Rehabilitation, Tim King ("King"), the Superintendent of the SWRJ,[1] and C.O. Butcher ("Butcher"), a correctional officer at the SWRJ.

On July 27, 2021, Jividen and King filed a motion to dismiss (ECF No. 20) and memorandum in support thereof (ECF No. 21) asserting that Plaintiff's complaint fails to state a claim upon which relief can be granted against them in either their individual or official capacities, that they are entitled to qualified immunity on Plaintiff's claims, and that Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. On July 29, 2021, Butcher also filed a motion to dismiss (ECF No. 22) and supportive memorandum (ECF No. 23) asserting similar defenses.

By Memorandum Opinion entered on August 13, 2021, the presiding District Judge denied Plaintiff's motion for preliminary injunction and dismissed his claims for declaratory and injunctive relief for mootness due to his transfer from the SWRJ to a correctional facility in Missouri. (ECF No. 26). Accordingly, those claims are no longer

---

[1] Plaintiff also lists "Administrator (Name Unknown)" as a defendant. However, because the title of Administrator was changed to Superintendent when the West Virginia Regional Jail and Correctional Facility Authority was merged with the West Virginia Division of Corrections under the governance of the West Virginia Division of Corrections and Rehabilitation ("WVDCR") in or around 2018, the undersigned believes that the use of the term Administrator is a misnomer and redundant of Plaintiff's naming of Tim King, the Superintendent of the SWRJ, as a defendant. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the "Administrator (Name Unknown)" is not a proper defendant herein. Therefore, the undersigned will recommend that this defendant be dismissed from this civil action pursuant to 28 U.S.C. § 1915A(b)(1) and 1915(e)(2)(B).

at issue and, to the extent that the parties' briefs still focus on those claims, there is no need for the court to further address them.

On September 21, 2021, Plaintiff filed a certificate of service indicating that he had served written discovery requests on Defendant Jividen on or about September 15, 2021. (ECF No. 28). On October 18, 2021, Defendants Jividen and King filed a motion for protective order asking that they not be required to respond to Plaintiff's discovery requests pending the resolution of their motion to dismiss. (ECF No. 32). On November 16, 2021, the undersigned granted Defendants' motion for protective order and barred any discovery prior to resolution of the pending motions to dismiss. (ECF No. 37).

On December 13, 2021, Plaintiff filed a response to Defendants' motions to dismiss. (ECF No. 39). His response largely complains about having insufficient time and access to the law library at his Missouri correctional facility to prepare a proper response and also about the denial of access to discovery. (*Id.* at 1-2, 4-5). His response compares his conditions of confinement at the SWRJ to those at the federal correctional facility where he was previously housed, and it makes a blanket assertion not addressed in his complaint that "all of [his] medical ordered medications were completely discontinued" and that he was "not even seen by a doctor or mental health provider." (*Id.* at 2). He further summarily asserts that this "is a form of cruel and unusual punishment" without attributing any specific conduct to the named Defendants. (*Id.*) He again asserts that he was placed in a cell with no lighting for 10 days, and further suggests that his potential exposure to other inmates with the Covid-19 virus caused him anxiety, but he does not contend that he contracted Covid-19 or suffered any actual physical injury, and he fails to allege that the named Defendants were involved in or specifically aware of any these actions. (*Id.*)

4

Plaintiff's response again contends that his due process and equal protection rights were violated by the denial of access to his legal papers. Specifically, he asserts that he "had already signed a waiver of extradition request on 1-18-15," that "to be called a fugitive from justice was unwarranted," and that he "tried to get his legal work to prove this, but it was not given to [him]." (*Id.* at 3). Yet he fails to identify any involvement by the named defendants and further fails to specify how the alleged denial of his legal papers actually denied him any process in any specific legal proceedings.

His response further clarifies that he was attempting to get access to a specific "Celebrate Recovery" Bible that he had previously possessed. He claims that the Bible had been searched upon his release from federal custody and again while he was temporarily housed at the McDowell County Jail, so he claims that the Bible was not a "danger" or security issue and that refusing to provide it to him was "unjust." (*Id.*)

Plaintiff's response acknowledges that Butcher only verbally threatened him, and generally speculates that SWRJ staff were "trying to bait [him] into a response" because he had previously been charged with assault of a law enforcement officer. (*Id.* at 3-4). Plaintiff further contends that, even if these claims, standing alone, do not rise to the level of any constitutional violation, considered collectively, they do constitute a violation of his due process and equal protection rights. (*Id.* at 4). But he provides no legal or factual support for his contentions.

On December 20 and 21, 2021, Defendants filed replies to Plaintiff's response to their motions to dismiss. (ECF Nos. 40 and 41). Defendants repeat their assertions that Plaintiff's complaint fails to state any plausible claims for relief, that they are entitled to qualified immunity on his claims, and that he failed to exhaust his administrative

remedies, all warranting dismissal of the complaint. They further contend that Plaintiff's response fails to cure the noted deficiencies in his claims. (*Id.*)

On January 3, 2022, Plaintiff filed a motion for leave to file an amended response to Defendants' motions to dismiss. (ECF No. 42). On January 26, 2022, the undersigned conducted a telephonic hearing and ultimately granted Plaintiff leave to file an amended response to the motions to dismiss. (ECF No. 48). Plaintiff was specifically advised on the record during the hearing, and again in the undersigned's written order, that his amended response must be received in the Clerk's Office by Monday, February 7, 2022. (*Id.* at 2). The order further directed Defendants to file any amended replies by Thursday, February 10, 2022.

Nothing was received from Plaintiff on February 7, 2022. However, on February 10, 2022, the Clerk's Office received and docketed Plaintiff's amended response, which is also construed to contain a motion to amend his complaint, despite not including a proposed amended complaint therewith. (ECF No. 49). The envelope accompanying the amended response indicates that Plaintiff allegedly placed it for mailing at his correctional facility on February 1, 2022, and it is postmarked on February 4, 2022. (*Id.* at 6-7). However, it was not received by the Clerk until Thursday, February 10, 2022. (*Id.* at 1). A prisoner, such as Plaintiff, is normally entitled to the benefit of the prison mailbox rule, finding that his document is deemed to be filed at the time he delivered it to prison authorities to be mailed to the Clerk. S*ee Houston v. Lack*, 487 U.S. 266 (1988). Because the undersigned has been unable to locate authority stating that the court's specific order that Plaintiff's filing must be received in the Clerk's Office by February 7, 2022 supersedes the Supreme Court's holding in *Houston*, the undersigned will consider the merits of Plaintiff's amended response as if it were timely filed.

Turning to the substance of the amended response, at the outset, Plaintiff agrees to the voluntary dismissal of Defendant Jividen. (*Id*. at 1). However, he also requests to add a John Doe defendant titled "Unknown Staff Member" without attempting to identify the title or role played by this John Doe defendant and without providing any factual support for a new claim against that defendant. (*Id*.)

Plaintiff's amended response further appears to contend that the previously unidentified nurse who examined him on October 3, 2020 only checked his heart rate and refused to provide him his medication, despite having all of it in the exam room with them. (*Id*. at 1). Plaintiff claims that this is "an act of deliberate indifference to [his] medical needs." (*Id*. at 2). Plaintiff further asserts that "at a later date, [he] was told that the nurse in question is C.O. Butcher's sister." (*Id*. at 1). However, he fails to allege or establish that he suffered any actual physical harm from this alleged conduct.

Plaintiff's amended response further generally asserts that he witnessed acts of physical violence by staff while he was at the SWRJ, but he fails to allege that he was the victim of any such violence or suffered any actual harm therefrom. (*Id*. at 2). He merely repeats his prior contention that Defendant Butcher was attempting to "provoke an incident to use the color of law to assault Plaintiff" without alleging that he actually suffered physical attack by Butcher or any other SWRJ staff. (*Id*.)

Plaintiff also repeats his allegations that the facilities at the SWRJ were not properly cleaned and further suggests that the failure to repair the lights in his cell fr approximately 10 days prohibited his ability to read and write. (*Id*. at 3). Finally, he contends that the denial of his "Celebrate Recovery" Bible was "part of his drug dependency treatment program" and that he had been permitted to possess it at the other correctional facilities where he had been incarcerated. (*Id*. at 4). He further appears to

summarily suggest that he cannot constitutionally be disallowed his "religious" materials.
(*Id.*)  However, he again fails to attribute the denial of his Bible to any of the named
Defendants or any other particular SWRJ staff.

Finally, Plaintiff's amended response summarily contends as follows:

> This is a liberty interest under the Due Process Clause and a protection
> under the Americans with Disabilities Act (ADA) with the threat of violence
> by staff member, the threat of infectious disease (Covid-19), the denial of
> lighting and/or sanitary living area, access to legal papers that prove that
> Plaintiff waived extradition under the Interstate Agreement on Detainers
> Act, in January of 2015, and the issue of personal property released from
> BOP with Plaintiff (Celebrate Recovery Bible).  With all of those issues
> together, there is a due process and cruel and unusual punishment with
> deliberate indifference to my medical needs.  With the issue of video footage
> and named staff members, Plaintiff can and/or prove all of these points.

(*Id.* at 4).

On February 10, 2022, Defendants filed their amended or supplemental replies.
(ECF Nos. 51 and 52).  Both replies contend that Plaintiff's amended response is untimely
because it was not received in the Clerk's Office by Monday, February 7, 2022, as
specifically required by the court.  The replies again assert the defenses previously raised
in their motions to dismiss (failure to exhaust administrative remedies, failure to state a
claim upon which relief can be granted, and entitlement to qualified immunity) and
further assert that Plaintiff's responses fail to cure the deficiencies in his complaint with
respect to his claims against these Defendants.  (*Id.*)  Additionally, Defendants assert that,
to the extent that Plaintiff's amended response is treated as a motion to amend his
complaint, his proposed amendments would be futile.  (*Id.*)  These matters are now ripe
for determination.

## II.    STANDARDS OF REVIEW

### A.    Standards for dismissal for failure to state a claim.

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific

task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

Pursuant to the provisions of 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B), the court may use the same principles applied to motions to dismiss under Rule 12(b)(6) to dismiss a claim in which a prisoner, proceeding *in forma pauperis*, seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss a claim if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) and (2).

B.    *Motions to Amend Complaint.*

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. Rule 15(a)(1) permits a plaintiff one opportunity, as a matter of course, to amend his or her complaint, subject to certain time limitations. Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2), on the other hand, provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court indicated that leave to amend a pleading should be denied only (1) when the

amendment would be prejudicial to the opposing party, (2) there has been bad faith on the part of the moving party, or (3) the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, in conjunction with his amended response to Defendants' motions to dismiss, Plaintiff appears to be requesting to amend his complaint to add a new unidentified defendant(s) and new claims for relief. Defendants assert that, even considering Plaintiff's proposed amendments, his claims still fail to state a plausible claim for relief against them or any other SWRJ employee and, thus, any such amendments would be futile.

An amendment is futile under Rule 15 if it would fail to survive a motion to dismiss for failure to state a claim. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Thus, it would be futile for the court to grant leave to amend a complaint when the proposed amendment is "clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

C.    *Qualified immunity standards.*

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims against them. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties" and "[o]fficials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right." *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

To determine whether a government official is entitled to qualified immunity on federal constitutional claims, the court must determine: "(1) whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the official's actions violated a constitutional right; and (2) whether that right was clearly established such that a reasonable person would have known their conduct was unlawful. *See Meyers v. Balt. Cty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). The undersigned will use these standards in evaluating the sufficiency of Plaintiff's claims against Defendants.

## III.   DISCUSSION

### A.   *Exhaustion of administrative remedies defense.*

Defendants assert that Plaintiff failed to exhaust his administrative remedies before filing his complaint. Specifically, they contend that Plaintiff did not initiate and complete the available grievance process required by the WVDCR. Plaintiff acknowledges that he did not exhaust that process but contends in his complaint that he was denied access to grievance forms prior to his transfer to Missouri, during the operative period when he could have timely filed a grievance. (ECF No. 1 at 3).

During the hearing held in this matter on January 26, 2022, Plaintiff told the court that, although he had access to the SWRJ's electronic kiosk once a week while in quarantine, he claims that he was told by other prisoners that he had to use a written grievance form to file a grievance and that he was not told the procedure and was denied the forms by correctional staff. He stated that all of his communications and requests were either made on the kiosk or verbally to correctional officers who did not bring him the forms. He conceded that he did not grieve the verbal threat by Butcher, the denial

of his requested materials, including his IAD papers or his Bible, or his conditions of confinement.

Defense counsel clarified that written grievance forms are available in the law library or upon request.  Defense counsel indicated that Plaintiff had acknowledged that he received/viewed the SWRJ's inmate handbook on October 6, 2020, and further articulated the history of specific inmate requests made by Plaintiff during the time he was incarcerated at the SWRJ.  Defense counsel further clarified that Plaintiff executed his complaint on November 8, 2020, mailed it on November 12, 2020, and was transferred from the SWRJ on November 15, 2020, more than a month after the initial incident giving rise to his complaint occurred.

Due to the representations made by the parties during the hearing, it is apparent that resolution of the exhaustion issue would require reliance on evidence outside the four corners of the complaint and is not presently before the court.  Accordingly, the undersigned **FINDS** that there are issues of fact that would need to be further developed concerning the availability of the exhaustion process to Plaintiff, and that consideration of the exhaustion issue would be better addressed, if at all, in a motion for summary judgment after further factual development, should the matter survive Defendants' other grounds for dismissal.  Therefore, the undersigned recommends that the presiding District Judge deny, without prejudice, Defendants' motions to dismiss with respect to their exhaustion defense.

      B.     *Defendants' Motions to Dismiss for failure to state a claim upon which relief can be granted.*

Defendants' motions to dismiss assert that Plaintiff's complaint fails to state any plausible claims upon which relief can be granted against them.  Their reply briefs

13

reiterate that argument and further assert that any proposed amendments suggested by Plaintiff, which were made without any proposed amended complaint, fail to cure the deficiencies in his claims and are, thus, futile. The undersigned will address each category of claims raised by Plaintiff and the arguments and evidence offered by the parties to support their positions.

          1.        Plaintiff's claims against Butcher.

Butcher's motion to dismiss contends that Plaintiff's allegation that he made a single verbal threat to "put knots on his head if [he] came to medical again" fails to rise to the level of a plausible Eighth Amendment violation. His memorandum of law asserts that federal courts have consistently held that mere verbal harassment or verbal abuse of an inmate by a corrections officer is insufficient to state a constitutional deprivation. *See Hill v. Rose*, No. 5:18-cv-1535, 2019 WL 2896597, 2019 U.S. Dist. LEXIS 112831, *7 (S.D.W. Va. June 10, 2019) (citing *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987)); *Lindsey v. O'Connor*, 327 F. App'x 319, 2009 WL 1316087, (3d Cir. May 13, 2009) (holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2nd Cir. 1986) (name-calling does not rise to the level of a constitutional violation); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). (ECF No. 23 at 9-10). Butcher further asserts that Plaintiff fails to allege that Butcher physically harmed him or had any further interaction with him beyond the single alleged incident in the medical unit. (*Id*. at 10).

Plaintiff's responses summarily contend that he witnessed other acts of alleged violence at the SWRJ and he speculates, without any factual support, that Butcher was attempting to provoke an assault by Plaintiff because of his prior charges of assaulting a

14

law enforcement officer.  Nevertheless, Defendants correctly assert that, absent an actual physical injury, a claim grounded in verbal harassment is insufficient to give rise to a violation of the Eighth Amendment, even where the Plaintiff alleges that he suffered mental distress from the alleged statements.  For example, in *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016), which dealt with alleged verbal sexual harassment of an inmate, without any actual physical contact, the Fourth Circuit found that a defendant was entitled to qualified immunity.  The undersigned has been unable to locate any clearly established federal precedent in which a court found a cognizable constitutional violation based upon an isolated incident of verbal harassment alone.  Thus, even taking as true Plaintiff's allegation that Butcher made this single verbal threat without any actual physical harm to Plaintiff, while seemingly unprofessional, is not actionable under the Eighth Amendment.

Nor has Plaintiff specifically attributed any other wrongful conduct alleged in his complaint, including the denial of access to his legal work or Bible, or the conditions of confinement at the SWRJ, to Butcher and, at any rate, Plaintiff has not alleged any actual injury suffered from such conduct or conditions that would give rise to a plausible claim for relief against Butcher.  To the extent that Plaintiff is attempting to hold Butcher liable for each of these alleged violations, his allegations, beyond the alleged single verbal threat, which is not actionable under the Eighth Amendment, are far too conclusory to survive a motion to dismiss under the principles of *Twombly* and *Iqbal*.  Moreover, Plaintiff's suggested amendments addressed in his amended response to the motions to dismiss fail to cure any of these deficiencies with respect to his claims against Butcher or to properly allege any new conduct at all by Butcher that would establish a plausible constitutional violation.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state any plausible claim upon which relief can be granted against Butcher and that he is entitled to qualified immunity on Plaintiff's claim(s) against him. Therefore, those claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

          2.       Plaintiff's claims against Jividen and King.

Defendants Jividen and King also assert that Plaintiff's complaint fails to state any plausible claim for relief against them and that they are entitled to qualified immunity in this civil action. Plaintiff has now agreed to the voluntary dismissal of his claims against Jividen. (ECF No. 49 at 1). Accordingly, the undersigned will recommend that Jividen's motion to dismiss be granted based upon Plaintiff's request.

Turning to his claims against King, Plaintiff's complaint and response documents fail to allege that King was individually involved in or engaged in any specific conduct giving rise to his alleged constitutional violations. Nor does he contend that, by his own specific conduct, King, as a supervisor, had actual knowledge of any of these alleged violations and tacitly authorized it, or that he was deliberately indifferent to unconstitutional conduct by his subordinates that caused actual harm to Plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994). Such supervisory liability may only be found where it is sufficiently alleged and demonstrated that the "official charged acted personally in the deprivation of the plaintiff's rights," or "where a subordinate acts pursuant to a policy or custom for which the supervisor is responsible." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Plaintiff has not met that weighty burden. In fact, his complaint and response documents are essentially wholly devoid of any specific allegations concerning conduct by King.

Rather, Plaintiff merely appears to be attempting to hold King liable under a theory of *respondeat superior* in his role as the Superintendent of the SWRJ, which is impermissible in a § 1983 action. *Iqbal*, 556 U.S. at 675-76; *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (government officials may not be held vicariously liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior* and must allege that each defendant's own individual actions violated the Constitution). Thus, the complaint fails to sufficiently state any plausible claim for relief against King, and he is entitled to qualified immunity on Plaintiff's claims against him in his individual capacity.

Moreover, to the extent that King is named in his official capacity, he is not a "person" who can be sued under section 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (a State, including its agencies and its officials acting in their official capacities are not "persons" under § 1983). Furthermore, state officials, such as King, are immune from suit in federal court under the Eleventh Amendment to the United States Constitution, which provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const., Amend. XI.[2]

This immunity applies, absent a specific waiver thereof, regardless of the form of relief sought. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-99, 101 (1984). A state can only waive its sovereign immunity by unequivocal expressions or actions. *Id.* at 99; *see also Edelman v. Jordan*, 415 U.S. 651, 673 (1921). Similarly,

---

[2] The Eleventh Amendment has also been held to bar suits against a state, or its officials, by its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974).

Congress can abrogate a state's immunity only where it has unequivocally expressed its intent to do so, and only where it has validly exercised its power. *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996).

The complaint herein has not raised any claims under a statute in which Congress has clearly and unequivocally abrogated the State's Eleventh Amendment immunity, and Plaintiff fails to assert a meritorious argument that the State of West Virginia has waived its sovereign immunity here. Accordingly, King is entitled to absolute immunity in his official capacity. Therefore, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint wholly fails to state a claim upon which relief can be granted against King and that his motion to dismiss should be granted under Rule 12(b)(6).

C.    *Plaintiff's motion to amend complaint.*

As noted above, Plaintiff's amended response to Defendants' motions to dismiss includes a request to add a new unidentified defendant and further appears to add new Eighth or Fourteenth Amendment claims grounded in the denial of his medications and deliberate indifference to his medical needs by unidentified medical staff, and continues to allege that other unidentified staff should be held liable for constitutional violations arising from his collective allegations concerning his treatment while he was incarcerated at the SWRJ. However, notwithstanding the fact that Plaintiff did not include a proposed amended complaint with his purported motion to amend, Plaintiff's proposed amendments as addressed in his amended response are so general and conclusory and fail to even attempt to describe or identify any additional staff members who he alleges are responsible for this alleged wrongful conduct. These attempts are simply insufficient to give rise to plausible claims pursuant to the dictates of *Twombly* and *Iqbal*.

18

At best, Plaintiff's amended response suggests that the nurse or other medical staff who examined or treated him during his incarceration at the SWRJ refused to provide him with prescribed medication that he had been taking for years. However, Plaintiff asserts that this is deliberate indifference to his medical needs without alleging that he suffered any actual injury resulting therefrom or from any of the conditions of confinement about which he complains. Nor has he alleged any facts to support an inference of deliberate indifference by any specific staff members. Instead, he merely speculates about harm he could have suffered, which is insufficient to establish a plausible violation of the Eighth Amendment. At bottom, Plaintiff's complaint and proposed amendments fail to sufficiently allege any plausible violation of his Eighth or Fourteenth Amendment rights and, thus, any such proposed amendments would be futile.

### III.    RECOMMENDATIONS

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendants' motions to dismiss (ECF Nos. 20 and 22) with respect to the exhaustion of administrative remedies defense, but **GRANT** the motions to dismiss for failure to state a claim upon which relief may be granted against Defendants Jividen, King, and Butcher, **DENY** Plaintiff's proposed motion to amend his complaint (ECF No. 49), **DISMISS** Defendant Administrator (Name Unknown) pursuant to 28 U.S.C. § 1915A(b)(1) and 1915(e)(2)(B), and **DISMISS** this civil action from the docket of the court.

Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff

shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff at his updated address.

February 11, 2022

Dwane L. Tinsley
United States Magistrate Judge